AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>7816 Fordson Road, Alexandria, Virginia 22306, which is a<br>single family residence with blue siding and yellow trim | )<br>)<br>)  Case No.1:17-sw-768<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Eastern _____ District of _____ Virginia _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(c) | Use and Carry of a firearm during and in relation to a drug trafficking crime. |
| 21 U.S.C. § § 841(a)(1), 846 | Conspiracy to distribute methamphetamine, a Schedule II controlled substance. |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:

AUSA Carina A. Cuellar

_____
*Applicant's signature*

Jonathan F. Earle, ATFSpecial Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____11/08/2017_____

_____/S/_____
John F. Anderson
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, VA

Hon. John F. Anderson, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is 7816 Fordson Road, Alexandria, Virginia 22306 (the

"PREMISES").  The PREMISES is a single family residence with blue siding and yellow trim.

The numbers "7816" are affixed on the front of the residence attached to the garage.  In addition,

the search shall be extended to any locked safe or container within the PREMISES.



## ATTACHMENT B

### *Property to be seized*

a)     The items to be seized are fruits, evidence, records and information relating to, contraband, or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846(a) (distribution and possession with intent to marijuana and other controlled substances, and conspiracy to distribute marijuana and other controlled substances) and Title 18, United States Code, Section 924(c) (carry and use of a firearm during and relation to a drug trafficking crime), including, but not limited to:

    a)  Illegal narcotics and drugs, in particular marijuana, a Schedule I controlled substance, and Xanex pills, a Schedule IV controlled substance;

    b)  Firearms, magazines, and ammunition;

    c)  Receipts documenting the purchase of firearms, magazines, and ammunition;

    d)  United States currency derived from the sale of controlled substances;

    e)  Money ledgers, and other documents noting the price, quantity, date and/or times when controlled substances were purchased, possessed, transferred, distributed, sold or concealed, or money was possessed or transferred;

    f)  Bank statements and records, which might reflect the proceeds generated from the sale of controlled substances;

    g)  Indicia of control, or ownership of the premises and things described in this warrant, such as utility bills, telephone bills, loan payment receipts, canceled envelopes and keys, photographs, and bank records;

    h)  Cellular phones, computers, and other electronic storage media or digital devices;

    i)   For any electronics searched, any conversations, whether through text messages or other applications, where HAYDEN discusses the purchase and sale of marijuana and other controlled substances;

    j)   For any electronics searched, any conversations, whether through text messages or other applications, where HAYDEN discusses the purchase and use of firearms; and

    k)   For any electronics searched, any photographs or videos of controlled substances, firearms, ammunition, firearms receipts, and documentation related to the purchase of firearms.

b)    For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a)   evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b)   evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c)   evidence of the lack of such malicious software;

21

d) evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e) evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f) evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g) evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h) evidence of the times the COMPUTER was used;

i) passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j) documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k) records of or information about Internet Protocol addresses used by the COMPUTER;

l) records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m) contextual information necessary to understand the evidence described in this attachment.

22

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, including "smart" phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No. 1:17-sw-768 |
| **7816 Fordson Road, Alexandria, Virginia 22306, which is a single family residence with blue siding and yellow trim.** | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jonathan F. Earle, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 7816 Fordson Road, Alexandria, Virginia 22306, hereinafter "PREMISES," further described in Attachment A, for the things described in Attachment B.  As further explained herein, OREAN ANTHONY HAYDEN, JR. has conspired to distribute controlled substances and used and carried a firearm during and in relation to a drug trafficking crime, within the Eastern District of Virginia and elsewhere.  Further, HAYDEN uses the PREMISES to both store and distribute controlled substances.

2.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for approximately eight years.  I am currently assigned to the ATF Falls Church Group II Field Office.  During my career, I have investigated individuals for the illegal possession and transfer of firearms, violent crimes involving firearms, and narcotics trafficking.

3.      Based on my training and experience, I know that individuals involved in the distribution of controlled substances keep narcotics, narcotics related items and paraphernalia, money, firearms, and firearm-related items in their residences.  In addition, in an enterprise involved in the distribution and possession with intent to distribute controlled substances, these locations may also contain apparently innocuous materials that are used for specific purposes in the drug trade.  For example, small and large plastic baggies are the packaging material of choice for many narcotics; scales are often used to ensure the quantities are commensurate with price, as well as to determine as accurately as possible the varying amounts of the drugs being sold.

4.      Based on my training and experience, I know that individuals involved in criminal activities will often communicate with their associates before, during, or after the crime by using cellular telephones and that communication can be made through either verbal conversation, third-party communication applications, or through the use of text messages between the two communicating party's cellular telephones or other devices.  It is also commonly understood and known that many people in our society communicate with their cellular telephones and other devices in both manners.

5.      Based on my training and experience, I also know that information gained through the obtaining of data stored in the part of the cellular telephone and other devices routinely referred to as an address book or contacts file in an individual's cellular telephone and other devices, as well as the recovery of text messages sent or received from that cellular telephone and other devices can lead to identifying accomplices, or witnesses to the crimes committed by the individual.  Based on my training experience, I also know that know that individuals frequently maintain personal records and documents in an electronic format on laptop

2

computers and/or smart phones.

6.     The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and observations of other law enforcement officers involved in this investigation. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, and other physical evidence obtained during the course of this investigation.

7.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

A.     Orean Anthony Hayden, Jr.'s possession of a firearm and marijuana

8.     On August 28, 2017, Alexandria Police Department ("APD") Officer Andrew Compton was operating a marked police cruiser in the area of Jefferson Davis Highway and Swann Avenue in Alexandria, Virginia, within the Eastern District of Virginia, when he observed a black Nissan Altima make an illegal U-turn into a bus lane. Officer Compton initiated a traffic stop on the vehicle in the 2300 block of Jefferson Davis Highway. Officer Compton was assisted on the traffic stop by Officer Sean Gallagher.

9.     Officer Compton made contact with the driver (hereinafter the "driver") and Officer Gallagher made contact with HAYDEN sitting in the front passenger seat. Both officers detected the odor of marijuana emanating from the vehicle. Officer Compton observed a backpack near HAYDEN's feet on the passenger side. Officer Compton asked the driver and HAYDEN to exit the vehicle, so the vehicle could be searched. Both officers observed

3

HAYDEN take the green backpack at his feet out of the vehicle. When HAYDEN walked past

Officer Gallagher, the officer detected the odor of marijuana localized to HAYDEN's person.

10.     Officer Compton conducted a probable cause search of the vehicle and seized a

small glassine baggie containing three (3) pills labeled "Xanax" in the front passenger side door,

which is where HAYDEN had been sitting. At the same time, Officer Gallagher notified

HAYDEN he was going to be searched because of the odor of marijuana emanating from his

person. Officer Gallagher asked HAYDEN to leave the green backpack on the curb while he

was being search. After searching HAYDEN, Officer Gallagher asked HAYDEN to sit on the

curb. Officer HAYDEN walked back to HAYDEN's backpack, which HAYDEN had removed

from the vehicle that smelled of marijuana. At that point, Officer Gallagher detected a heavy

odor of marijuana emanating from the backpack. Officer Gallagher then asked another officer to

watch HAYDEN while Officer Gallagher searched the backpack. HAYDEN then asked Officer

Gallagher "Why do you have to search my backpack?" Officer Gallagher informed HAYDEN

that he was going to search the backpack because it smelled like marijuana.

11.     As Officer Gallagher began to search the backpack, HAYDEN stood up and

began to run west across three lanes of traffic on Jefferson Davis Highway towards East Custis

Avenue. Both Officer Gallagher and the other officer ran after HAYDEN while yelling to him to

stop running. The officers continued to pursue HAYDEN. Ultimately, Officer Gallagher

apprehended HAYDEN near the backyard of a location on Randolph Street. Additionally, while

HAYDEN was fleeing an Alcatel OneTouch cell phone fell out his pocket and was recovered by

APD. HAYDEN later identified the phone as his.

12.     After HAYDEN fled the scene, Officer Compton picked up the backpack and also detected a strong odor of marijuana emanating from the backpack. Officer Compton searched the backpack and located a large sandwich bag with a green leafy substance weighing approximately 4.04 ounces, a digital scale with suspected marijuana residue and a Taurus .38 caliber revolver. The suspected marijuana field-tested positive for the presence of marijuana.

13.     Based on my training and experience, I also know that the Taurus .38 caliber revolver constitutes a firearm pursuant to Title 18, United States Code, Section 921(a)(3).

14.     After HAYDEN was arrested, he was advised of his *Miranda* rights and waived those rights. Officer Compton informed Officer Gallagher of what was found during the search of the backpack. Officer Gallagher then asked HAYDEN if he (HAYDEN) ran because of the gun and marijuana and HAYDEN replied in the affirmative. HAYDEN was then transported to Alexandria hospital for a laceration he sustained during the pursuit. While in the ambulance, HAYDEN stated to Officer Gallagher "all I had on me was the gun and my weed." Officer Gallagher asked HAYDEN how much weed he had on him and HAYDEN stated "4 ounces." Officer Gallagher asked HAYDEN why he had so much weed and HAYDEN stated "I got the weed for a smoke party" and later stated "I told the guy my thing is selling weed." HAYDEN stated he purchased the weed from an individual in Maryland, who the driver introduced to him. Officer Gallagher asked HAYDEN why he had the gun. HAYDEN stated it was his firearm and that he bought the firearm for $150. HAYDEN again stated that he ran because of the weed and the gun he had in his backpack.

15.     Officer Compton detained the driver. After being advised of his *Miranda* rights and waiving those rights, the driver stated he has known HAYDEN for a couple of years and

5

even lived with him in the past. The driver stated HAYDEN called him for a ride. The driver

denied knowing the contents of HAYDEN's backpack. The driver further stated he asked

HAYDEN to place the backpack in the back of the car; however, HAYDEN insisted on keeping

the backpack with him. The driver further stated that he could not smell the marijuana in

HAYDEN's backpack. The driver was cited for disregarding a highway sign and driving

without an operator's license and was allowed to leave.

      B.    <u>Search of Orean Anthony Hayden, Jr. at the Alexandria Adult Detention Center</u>

      16.    While at the hospital with HAYDEN, Officer Gallagher detected a heavy odor of

marijuana emanating from HAYDEN's person. Officer Gallagher asked HAYDEN if he had any

more marijuana on him, which HAYDEN denied. Officer Gallagher notified HAYDEN he

would be searched again. A secondary search of HAYDEN was conducted at the Alexandria

Adult Detention Center. During this search, law enforcement located a bag of suspected

marijuana from HAYDEN's groin area. The suspected marijuana was wrapped in a clear bag

with multiple individual clear bags of suspected marijuana and weighted approximately 11.5

grams.

      17.    HAYDEN was arrested for carrying a concealed weapon, possession of schedule

IV narcotics (Xanax), and felony possession with intent to distribute marijuana.

      18.    Based on my training and experience investigating narcotics trafficking, I know

that four (4) ounces of marijuana is consistent with distribution levels. Further, I know it is

common for marijuana distributors to charge their customers based on weight, and that

distributors use digital scales to accurately measure marijuana prior to selling to customers and

then package this marijuana in smaller plastic bags.  I further know that drug distributors keep firearms close to their drug stashes and on their person for personal protection.

      C.    <u>Search of Orean Anthony Hayden, Jr.'s Cellular Phone</u>

19.    The APD obtained a state search warrant to extract the digital data on HAYDEN's cellular phone, which fell from Hayden's pocket as he was fleeing law enforcement. Law enforcement observed text messages between April 30 and August 28, 2017 on HAYDEN's phone.  The text messages revealed HAYDEN is involved the distribution of controlled substances from his residence. HAYDEN frequently uses the term "white" or "white gurl" in text messages to unidentified individuals.  Based on my training and experience "white" or "white gurl" are slang terms for heroin or cocaine.  HAYDEN also uses the term "pak," which I also know to be a common slag term for marijuana.

20.    For instance, on June 21, 2017, HAYDEN texted several unknown individuals, "Yo gurl on deck,""Yo coke on deck," "Yo white gurl on deck," and "White gurl back in town." Based on my training and experience, the term "on deck" means HAYDEN has cocaine or heroin ready for sale.

21.    On June 26, 2017, HAYDEN received a text message from an unknown individual stating "you got a 3.5 bruh,"  HAYDEN responded via text message "come thru I'm at home."  Based on my training and experience, I know "3.5" is a common term for 3.5 grams of a controlled substance.  HAYDEN also provides the PREMISES via text message to unidentified individuals to sell controlled substances.

22.    Further, a review of the photos and videos on HAYDEN's phone extraction revealed HAYDEN to be in possession of firearms, U.S. currency, and controlled substances at

the PREMISES. For instance, there is a photograph dated May 12, 2017, of a clear plastic bag with a green leafy substance consistent with marijuana on a digital scale. HAYDEN's phone also contains a video dated June 19, 2017, which shows HAYDEN in the backyard of the PREMISES with an AK-47 style firearm, U.S. currency, and a firearm similar in make and model as the firearm HAYDEN possessed in his backpack on August 28, 2017. Then, in a photograph dated June 9, 2017, HAYDEN can be seen in the driveway of the PREMISES in possession of U.S. currency, a clear plastic bag containing a green leafy substance consistent with marijuana, and a clear plastic bag with a white rock like substance consistent with crack cocaine.

23.     The Alexandria Commonwealth's Attorney's Office dismissed HAYDEN's charges in favor of federal prosecution.

D.     Surveillance of the PREMISES

24.     On October 3, 2017, law enforcement conducted surveillance of the PREMISES. During the surveillance, law enforcement observed the backyard and driveway of the residence to be the same as videos and photos viewed on HAYDEN's phone. At approximately 1:35 p.m., law enforcement observed a silver Dodge exit the garage to the residence. The vehicle was driven by an older African American female. A Department of Motor Vehicle Query of the vehicle revealed that it is registered to HAYDEN and his mother. Later that day, law enforcement observed a white Nissan Sports Utility Vehicle enter the driveway to the residence. HAYDEN was observed exiting the vehicle. HAYDEN proceeded towards the front of the residence at which time he was observed using a key to open the front door.

8

25.     On October 18, 2017, law enforcement conducted surveillance of the PREMISES. At approximately 3:07 p.m., law enforcement observed HAYDEN exit the residence and enter a vehicle with an unknown individual.

26.     On October 27, 2017, law enforcement conducted surveillance of the PREMISES. During the surveillance, law enforcement observed a black Honda sedan pull into the driveway of the PREMISES.  Law enforcement observed HAYDEN's brother exit the residence through the garage and enter the passenger side of the vehicle.  Approximately 30 seconds later, law enforcement observed HAYDEN's brother exit the vehicle and enter the PREMISES.  A Department of Motor Vehicle query of the vehicle revealed the registered owner of the vehicle had previously been convicted of a felony.

27.     Continuing on this date, law enforcement observed HAYDEN meet with an unidentified male in the driveway of the PREMISES.  Law enforcement observed the unidentified male walk to the PREMISES and provide HAYDEN with money, which law enforcement then observed HAYDEN counting the money.  HAYDEN then placed the money into his pocket and handed the unidentified male something small from his pocket.  The entire transaction took approximately one minute.  Based on my training and experience, these transactions are consistent with a hand to hand sale of controlled substances.  Additionally, these transactions are consistent with text messages observed on HAYDEN's phone where he instructs unknown individuals to come to his driveway to conduct the sale of controlled substances.

28.     Based upon the fact that law enforcement observed videos and photos of HAYDEN at the PREMISES in possession of firearms and controlled substance; that HAYDEN has texted unidentified individuals to obtain controlled substances from him at the PREMISES;

9

that HAYDEN has recently been observed engaging in conduct consistent with selling controlled substances from the PREMISES; and that HAYDEN used and carried a firearm during and in relation to a drug trafficking crime, I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and to seize the items described in Attachment B.

## TECHNICAL TERMS

29.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  *IP Address*:  The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    b.  *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

10

    c. *Storage medium*: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

30.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

31.    *Probable cause.* I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

11

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

32.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

12

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the

13

computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the

14

computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence

15

of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

33.     *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

   a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

16

b.  Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.  Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

34.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

35.     Because several people share the PREMISES as a residence, it is possible that the PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that it is possible that

17

the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

36.     Based on the foregoing facts, there is probable cause to believe that OREAN ANTHONY HAYDEN, JR. is involved in the following federal offense: (i) conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and (ii) carry and use of a firearm during a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).  In addition, there is probable cause to believe that items and records that are evidence of these violations are currently contained in the PREMISES known as 7816 Fordson Road, Alexandria, Virginia 22306.  I submit that this affidavit therefore supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B.


_____

Jonathan F. Earle
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Subscribed and sworn to before me this _____ day of November, 2017.

_____ /s/ _____

John F. Anderson
United States Magistrate Judge
The Honorable John F. Anderson
United States Magistrate Judge

18

## ATTACHMENT A

*Property to be searched*

The property to be searched is 7816 Fordson Road, Alexandria, Virginia 22306 (the "PREMISES"). The PREMISES is a single family residence with blue siding and yellow trim. The numbers "7816" are affixed on the front of the residence attached to the garage. In addition, the search shall be extended to any locked safe or container within the PREMISES..



19

## ATTACHMENT B

*Property to be seized*

a)      The items to be seized are fruits, evidence, records and information relating to, contraband, or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846(a) (distribution and possession with intent to marijuana and other controlled substances, and conspiracy to distribute marijuana and other controlled substances) and Title 18, United States Code, Section 924(c) (carry and use of a firearm during and relation to a drug trafficking crime), including, but not limited to:

a)   Illegal narcotics and drugs, in particular marijuana, a Schedule I controlled substance, and Xanex pills, a Schedule IV controlled substance;

b)   Firearms, magazines, and ammunition;

c)   Receipts documenting the purchase of firearms, magazines, and ammunition;

d)   United States currency derived from the sale of controlled substances;

e)   Money ledgers, and other documents noting the price, quantity, date and/or times when controlled substances were purchased, possessed, transferred, distributed, sold or concealed, or money was possessed or transferred;

f)   Bank statements and records, which might reflect the proceeds generated from the sale of controlled substances;

g)   Indicia of control, or ownership of the premises and things described in this warrant, such as utility bills, telephone bills, loan payment receipts, canceled envelopes and keys, photographs, and bank records;

h)   Cellular phones, computers, and other electronic storage media or digital devices;

    i)  For any electronics searched, any conversations, whether through text messages or other applications, where HAYDEN discusses the purchase and sale of marijuana and other controlled substances;

    j)  For any electronics searched, any conversations, whether through text messages or other applications, where HAYDEN discusses the purchase and use of firearms; and

    k)  For any electronics searched, any photographs or videos of controlled substances, firearms, ammunition, firearms receipts, and documentation related to the purchase of firearms.

b)    For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a)  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b)  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c)  evidence of the lack of such malicious software;

21

d)  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e)  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f)  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g)  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h)  evidence of the times the COMPUTER was used;

i)  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j)  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k)  records of or information about Internet Protocol addresses used by the COMPUTER;

l)  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m)  contextual information necessary to understand the evidence described in this attachment.

22

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, including "smart" phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.